ACCEPTED
04-14-00898-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/5/2015 2:33:19 PM
KEITH HOTTLE
CLERK

NO. 04-14-00898-CV

COURT OF APPEALS

FOURTH DISTRICT OF TEXAS

SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

5/5/2015 2:33:19 PM

KEITH E. HOTTLE
Clerk

ANTHONY C. AGUILAR

Appellant,

vs.

MARGARET MORALES,

Appellee.

On Appeal from Cause No. 2012-PC-2800 from
Statutory Probate Court 2 of
Bexar County, Texas

## APPELLANT'S BRIEF

ANTHONY C. AGUILAR
PRO SE

11405 North Loop

El Paso, Texas 79927-9523

(915) 858-0225

(915) 858-5051 fax

Tex. Bar No. 00936000
tonyaguilar@yahoo.com

Oral argument requested

# IDENTITIES OF PARTIES, COUNSEL and TRIAL JUDGE

Trial Judge(s)

Thomas Rickoff, Judge Presiding
Statut0ory Probate Court 2 of Bexar County, Texas

Gladys Burwell, Judge Presiding
Statutory Probate Court 2 of Bexar County, Texas

Appellant                                          Appellee

Anthony C. Aguilar                          Margaret Morales
11405 North Loop                            Present Address unknown
El Paso, Texas 79927


Counsel for Appellant                     Counsel for Appellee
                        Trial Counsel

Tony Aguilar                                     William Leighner
11405 North Loop                             Suite 1500
El Paso, Texas 79927                        700 N. St. Mary's Street
Tex. Bar No. 00936000                      San Antonio, Texas 78205
                                                       Tex. Bar No. 24027441


                        Appeal Counsel

Tony Aguilar                                     Laura Cavaretta
11405 North Loop                             Suite 1500
El Paso, Texas 79927                        700 N. St. Mary's Street
Tex. Bar No. 00936000                      San Antonio, Texas 78205
                                                       Tex. Bar No. 04022820

ORAL ARGUMENT REQUESTED

Request is made for oral argument pursuant to TEX. R. APP. P.39.1

# TABLE OF CONTENTS

Identities of Parties, Counsel and Trial Judge……………………………………i

Request for Oral Argument………………………………………………………ii

Table of Contents…………………………………………………………………iii

Table of Authorities………………………………………………………………iv

Statement of the Case……………………………………………………………ix

Issues Presented…………………………………………………………………..x

Statement of Facts………………………………………………………………..1

Summary of the Argument………………………………………………………18

Argument and Authorities……………………………………………………….23

Prayer……………………………………………………………………………53

Certificate of Compliance………………………………………………………53

Appendix………………………………………………………………………..54

Exhibit 1. January 11, 2013 Sanctions Order

Exhibit 2. December 11, 2014 Sanctions Order

Certificate of Service……………………………………………………………64

# INDEX OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Alanis v. Valdespino*, _____S.W.3d _____,
2012WL1865498, 04-11-00122-CV
(Tex.App-San Antonio 2012, no pet.)……………………………….26, 28

*Allison v. National Un. Fire Ins.*, 703 S.W.2d 637 (Tex.1986)……34

*American Flood Research, Inc. v. Jones*, 192 S.W.3d 581
(Tex.2006)……………………………………………………………29

*Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187,
14 L.Ed. 62 (1965)………………………………………………..27

*Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845
(Tex.2005)……………………………………………………………32

*Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839 (Tex.1986)……28, 31, 34, 40,
42, 44

*Butan Valley N.V. v. Smith*, 921 S.W.2d 822
(Tex.App.—Houston [14th Dist.] 1996, no writ)…………………23, 37, 38

*Cameron v. Brown*, 80 S.W.3d 549 (Tex.2002)…………………..50, 51

*Chrysler Corp. v. Blackmon*, 841 S.W.2d 844 (Tex.1992)……….28, 29, 31, 41

*Cire v. Cummings*, 134 S.W.3d 835 (Tex.2004)…………………..41

*City of San Antonio v. Estrada*, 219 S.W.3d 28
(Tex.App.—San Antonio 2006, no pet.)………………………….23, 49

*C.M. Asfahl Agency v. Tensor*, 1135 S.W.3d 768
(Tex.App.—Houston [1st Dist.] 2004, no pet.)……………………48

*Coakley v. Reising*, 436 S.W.2d 315 (Tex.1968)…………………34

*Deleon v. State*, 105 S.W.3d 47
(Tex.App.—El Paso 2003, no pet.)…………………………………39

*Dixon v. State*, 940 S.W.2d 192
(Tex.App.—San Antonio 1996, no pet.)…………………………48

*Estate of Davis v. Cook*, 9 S.W.3d 288
(Tex.App.—San Antonio 1999, no pet.)…………………………30

*Greene v. Young*, 174 S.W.3d 291
(Tex.App.—Houston [1st. Dist.] 2005, pet. denied)………………26, 28

*GTE Comms. Sys. v. Tanner*, 856 S.W.2d 725 (Tex.1993)………30, 38, 44, 47

*Gutierrez v. Lone Star National Bank*, 960 S.W.2d 211
(Tex.App.—Corpus Christi 1997, pet. denied)……………………27

*Hamill v. Level*, 917 S.W.2d 15 (Tex.1996)………………………29

*Heckman v. Williamson Cty.*, 369 S.W.3d 137 (Tex.2012)……….50

*Hernandez v. Mid-Loop, Inc.*, 170 S.W.3d 138
(Tex.App.—San Antonio 2001, no pet.)…………………………29

*Huie v. DeShazo*, 922 S.W.2d 920 (Tex.1996)……………………35, 45

*In re Estate of Alvilda Mae Aguilar*,
_____ S.W.3d _____, 2014WL4438085,
04-13-00815-CV……………………………………………………19, 20, 21, 32, 39,
43

*In re Estate of Ramiro Aguilar, Jr.*, 435 S.W.3d 831,
(Tex.App.—San Antonio 2014, pet. denied)……………………25

*In re Greater Houston Orthopaedic Specialist, Inc.*,
295 S.W.3d 323 (Tex.2009)………………………………………51

*In the Interest of F.R.K.*, _____S.W.3d_____,
2000WL1060397, 04-09-00269-CV
(Tex.App.—San Antonio 2000, no pet.)……………………………..46, 47

*Johnson v. Chesnutt*, 225 S.W.3d 737
(Tex.App.—Dallas 2007, pet. denied)…………………………….23, 37

*Karlock v. Schattman*, 894 S.W.2d 517
(Tex.App.—Fort Worth 1995, no writ)……………………………38

*Lake Travis ISD v. Lovelace*, 243 S.W.3d 244
(Tex.App.—Austin 2007, no pet.)…………………………………30

*Low v. Henry*, 221 S.W.3d 609 (Tex.2007)………………………...44

*Ludlow v. DeBerry*, 959 S.W.2d 265
(Tex.App.—Houston [14th Dist.] 1997, no writ)…………………..35, 37, 38, 42, 45

*Mantri v. Bergman*, 153 S.W.3d 715
(Tex.App.—Dallas 2005, pet. denied)…………………………….25, 26, 28

*Matthews Trucking Co. v. Smith*, 682 S.W.2d 237 (Tex.1984)……34

*Montgomery v. Kennedy*, 669 S.W.2d 309 (Tex.1984)……………35, 37, 42, 45

*Paradigm Oil, Inc. v. Retamco Oper., Inc.*, 372 S.W.3d 177
(Tex.2012)………………………………………………………….28, 29

*Parker v. Walton*, 233 S.W.3d 535
(Tex.App.—Houston [14th Dist. 2007, no pet.)……………………38

*Reddy Prtshp./5900 N. Freeway, L.P. v. Harris Cty. Appr. Dist.*,
370 S.W.3d 373 (Tex.2012)………………………………………..51

*Rodriguez v. State*, 90 S.W.3d 340
(Tex.App.—El Paso 2001, pet. ref'd)………………………………48

*Spohn Hosp. v. Mayer*, 104 S.W.3d 878 (Tex.2003)………………28, 41

*Tarrant Cty. v. Chancey*, 942 S.W.2d 151
(Tex.App.—Fort Worth 1997, no writ)……………………………30

*Tex.Ass'n of Bus. V. Tex. Air Control Bd.*, 852 S.W.2d 440
(Tex.1996)………………………………………………………50

*Texas Dept. of Parks and Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004)………………………………23, 49

*TransAmerican Natural Gas Corporation v. Powell*,
811 S.W.2d 913 (Tex.1991)…………………………………28, 29, 30, 40,
41

*Trimble v. Itz*, 898 S.W.2d 370 (Tex.App.—San Antonio 1995)
writ denied, 906 S.W.2d 481 (Tex.1995)……………………..44

*Unifund CCR Partners v. Villa*, 299 S.W.3d 92 (Tex.2009)……….45

*Union City Body Co., Inc. v. Ramirez*, 911 S.W.2d 196
(Tex.App.—San Antonio 1995, orig. proceeding),………………..27

*West Orange-Cove Consol. ISD v. Alanis*, 107 S.W.3d 558
(Tex.2003)………………………………………………………50

**Rules**

TEX. R. APP. 44.1(a)………………………………………..46, 48

TEX. R. CIV. P. 13………………………………………...30, 38, 44

TEX. R. CIV. P. 21………………………………………..27

TEX. R. CIV. P. 21a………………………………………26

TEX. R. CIV. P. 88………………………………………..36

TEX. R. CIV. P. 93………………………………………..50

TEX. R. CIV. P. 190 thru 214……………………………..35, 42

TEX. R. CIV. P. 193.6……………………………………47

TEX. R. CIV. P. 194.2(f)…………………………………48

TEX. R. CIV. P. 195.2 (a)……………………………………………48

TEX. R. CIV. P. 199………………………………………………..35

TEX. R. CIV. P. 324(b)……………………………………………38

TEX. R. EVID. 1006………………………………………………47, 48

**Statutes**

TEX. CIV. PRAC. & REM. CODE ANN. § 9.01……………………44

TEX. CIV. PRAC. & REM. CODE ANN. § 9.01……………………44

TEX. EST. CODE ANN. § 22.018……………………………………32, 33

TEX. EST. CODE ANN. § 32.005……………………………………39, 43

TEX. EST. CODE ANN. § 32.007……………………………………39, 43

TEX. EST. CODE ANN. § 32.007(5)…………………………………40, 43, 44

TEX. EST. CODE ANN. § 34.001……………………………………..36

TEX. EST. CODE ANN. § 351.151(b)………………………………...32, 33, 34, 45, 51

TEX. EST. CODE ANN § 355.202……………………………………33, 45

TEX. PROB. CODE ANN. § 233(a) (repealed eff. Jan. 1, 2013)…….33

## STATEMENT OF THE CASE

NATURE OF THE CASE:  This is an appeal from an Order from Statutory Probate Court 2, Bexar County, Texas imposing monetary sanctions after a portion of cause no. 04-13-00038-CV had been reversed and remanded for a determination of the intent of Anthony C. Aguilar in filing a lawsuit in cause no. 2012-DCV-05856.

DISPOSITION AT TRIAL
LEVEL                    The Probate Court entered an Order imposing monetary sanctions in the amount of $34,005.91 but did not address the intent issue the subject of the remand by this Court.

# ISSUES PRESENTED

**ISSUE ONE:** Did the trial court have jurisdiction to impose sanctions for events that occurred in the 327th District Court?

**ISSUE TWO:** The trial court could not impose monetary sanctions, a lesser included sanction, when it already had imposed death penalty sanction by dismissing the transferred case.

**ISSUE THREE**: The trial court abused its discretion in imposing sanctions relying on a finding Aguilar lacked standing to sue or take other action on behalf of the Estate of Ramiro Aguilar, Jr.

**ISSUE FOUR**: The trial court abused its discretion in imposing sanctions relying on Aguilar representing himself as representative of the Estate of Ramiro Aguilar, Jr. in issuing deposition notices to various witness especially when the notices were issued before any motion to transfer was filed in the trial court.

**ISSUE FIVE**: The trial court abused its discretion in imposing sanctions relying on Aguilar obtaining a default judgment when there is no evidence Aguilar or the 327th District Court knew about the October 10, 2012 ex parte transfer order prior to October 29, 2012.

**ISSUE SIX**: The trial court abused its discretion in imposing sanctions relying on Aguilar obtaining a default judgment when there is no evidence Aguilar wrongfully and intentionally pursued and obtained a fictitious Default Judgment against Margaret Anne Morales on his *Original Petition* before the 327th District Court.

**ISSUE SEVEN**: The trial court abused its discretion in imposing death penalty sanctions.

**ISSUE EIGHT:** The trial court abused its discretion because it failed to offer a reasonable explanation as to the appropriateness of the death penalty sanction imposed.

**ISSUE NINE:** The trial court abused its discretion because it failed to offer a reasonable explanation as to the appropriateness of the monetary sanction imposed.

**ISSUE TEN:** The trial court abused its discretion in relying on the finding the 327th District Court lacked jurisdiction to enter the Default Judgment.

**ISSUE ELEVEN:** The trial court abused its discretion in relying on the finding the filing by Aguilar of the original petition in the 327th District Court was a gross and intentional misrepresentation to that Court and done with purposeful intent to harass Morales by way of the egregious Default Judgment.

**ISSUE TWELVE:** The trial court abused its discretion in admitting any evidence by Morales in the December 11, 2014 hearing because she failed to timely provide requested discovery and did not offer a good cause in the record for its admission

**ISSUE THIRTEEN:** The trial court abused its discretion in admitting attorney fees evidence when a timely objection was made that Aguilar had not been provided with summaries required by TEX. R. EVID. 1006.

**ISSUE FOURTEEN:** Once the trial court granted the plea to jurisdiction it lost any jurisdiction to enter a sanction order.

## STATEMENT OF FACTS

This appeal involves imposition of sanctions on Anthony C. Aguilar [Aguilar] by Probate Court 2, Bexar County, Texas [the trial court] for events that occurred in the 327th District Court. CR 17-32. The major event that occurred in the 327th District Court was Aguilar filing a lawsuit and then obtaining a default judgment against Morales. 3RR Exhibit A-1.

On January 11, 2013 the trial court entered death penalty sanctions by dismissing the transferred case. CR 399-401.

This Court rendered its opinion in *In re Estate of Aguilar,* _____ S.W.3d _____, 2014 WL 6675160, 4-13-00038-CV (Tex.App.—San Antonio 2014, pet. denied) reversing the sanctions issue for a hearing on the intent of Aguilar in filing the lawsuit in the 327th District Court. Supp. CR 17-32. Nonetheless the trial court entered a sanction order covering a number of other points. CR 720-22. The only intent finding was Aguilar had filed the lawsuit with the "purposeful intent to harass Margaret Morales [Morales]. CR 721.

### FACTS LEADING TO THE FILING OF THE LAWSUIT IN THE 327TH JUDICIAL DISTRICT COURT.

Ramiro Aguilar, Jr. [Ray] died on July 7, 2012. CR 8.

1

Alvilda Mae Aguilar [Sandy], the mother of Aguilar, his brother and two sisters and the wife of Ray, died a short time later. 3RR Ptf. Exhibit 1, attached exhibit A-1, p.8.[1]

Morales was appointed independent executrix. CR 16.

Prior to her appointment there was considerable concern about what information Morales would provide the other heirs, CR 235, 240, 241, 242, 248, 249, 269-70, 271, 280, because of her prior record of stealing monies from her parents. 3RR Ptf. Exhibit 1, attached exhibit A-1, exhibits 18, 19 attached to exhibit A-1. There was ample information Morales had stolen from each of her parents during the respective parents' life. 3RR Ptf. Exhibit 1, attached exhibit A-1, exhibits 18, 19 attached to exhibit A-1.

Aguilar, his brother Michael and others knew Morales had been stealing monies. 3RR Ptf Exhibit 1, attached exhibit A-1, p. 9, 3RR Ptf. Exhibit A-1, attached exhibits 19, 19A, B, C, and D.

The infirmity of Ray could be traced to a fight between him and Morales about money. 3RR Ptf. Exhibit 1, attached exhibit A-1, p. 6. Once Sandy died Morales stated to Aguilar that she did not have to account for the money from the past, only the future. 3RR Ptf. Exhibit 1, attached exhibit A-1, p. 8. She

---

[1] There are three court reporter's transcripts. The October 31, 2012 transcript is referred to as 1RR. The December 5, 2012 transcript is referred to as 2RR. The December 11, 2014 transcript is referred to as 3RR.

Aguilar has no idea why the exhibits submitted by him in the December 11, 2014 hearing are referred to as Plaintiff's Exhibits.

was told she would have to account for all the money. 3RR Ptf. Exhibit 1, attached exhibit A-1, p. 8.

After the funeral of Sandy, Morales stated she would provide all the documents showing how much money had come in, how much money was spent and what she had done with it so that the other siblings knew she [Morales] had not taken one cent. 3RR Ptf. Exhibit, attached exhibit 1 A-1, p. 8.

A meeting of the siblings was held concerning the Estates. 3RR Ptf. Exhibit 1, attached exhibit A-1, p. 8. Morales provided one document. 3RR Ptf. Exhibit 1, attached exhibit A-1, p. 8. Morales stated she was not providing any other documentation; that she did not have to account for monies in the past. 3RR Ptf. Exhibit A-1, p. 9.

Morales requested Aguilar handle the probate of the Wills of Ray and Sandy. 3RR Ptf. Exhibit 5 attached Exhibit 1. Aguilar requested information about the finances of each of the parents. 3RR Ptf. Exhibit 5 attached Exhibit 1.

After the August 13, 2012 meeting Aguilar concluded Morales was not going to provide any information on the two Estates. 3RR 79-80.

By email dated August 27, 2014 Aguilar again requested information for use in the probate proceedings. 3RR Ptf. Exhibit 5 attached Exhibit 2.

Prior to filing the lawsuit in the 327th Judicial District Court Aguilar did research about filing the case in El Paso County. 3RR 81-

By email dated September 14, 2012 Morales confirmed there were going to be problems in the handling of the two Estates since she hired another attorney to handle the Estates. CR 244, 3RR Exhibit 5, attached Exhibit 3, but failed to notify Aguilar until 3 days prior to the hearing on the applications to probate the Wills. CR 245. Aguilar responded on the same date and stated Morales would still have to account for $1.65 million. CR 245. Aguilar also stated he would move for production of information from Morales. CR 245, 246.

By email dated September 15, 2012 Aguilar advised Michael Aguilar and Teri Aguilar the probate matters would take some time; that if Morales had not taken the monies she would provide the information immediately. CR. 247.

By email dated September 17, 2012 Aguilar requested information from Arthur Bayern concerning the assets of the Estates and notification to him of misappropriation of assets of the Estates by Morales. CR 249-50.

On September 19, 2012 Aguilar filed a lawsuit in the 327th Judicial District Court in cause number 2012DCV5856. CR. 22. It alleged Morales did acts, misappropriating monies and other assets, pursuant to a power of attorney. CR 22.

On or about October 18, 2012 Aguilar filed a Motion to Remove Morales as executrix of the two Estates. 3RR Ptf. Exhibit A-1 attached Exhibit 18. In the Motion Aguilar offered evidence, uncontested by Morales, that Morales had

4

previously stolen money from her parents. 3RR Ptf. Exhibit A-1 attached Exhibit 18.

According to the docket sheet and review by the presiding judge of the 327th District Court prior to the hearing on the default judgment no pleading was filed by Morales in the case. 3RR Ptf. Exhibit A-2.[2] As such, Aguilar appeared before the 327th District Court on October 29, 2012 and obtained a default judgment. 3RR Exhibit A-1.

**Prior to the commencement of the hearing Judge Chew, presiding judge of the 327th District Court, reviewed the file and found no appearance by Morales. 3RR Ptf. Exhibit A-1, p. 4, 2RR 27-28.**

At the October 29, 2012 hearing the bailiff reviewed the file to determine if Morales had filed any pleading. 3RR 82. Aguilar checked the file. 3RR 83. The presiding judge checked the file. 3RR 83.

During the hearing on the default judgment, Aguilar stated one of the reasons for filing the El Paso lawsuit was because Arthur Bayern [Bayern], the probate attorney retained by Morales, refused to sue Morales in her individual capacity. 3RR Exhibit A-1, p. 10. He also stated he wanted to obtain the documents concerning his parents' financial condition. 3RR Exhibit A-1, p. 18. The presiding judge stated she was granting the default judgment but would consider

---

[2] Any Order Transferring Case was not served on Aguilar as required by TEX. R. CIV. P. 21a. The docket sheets for cases in El Paso County, Texas can be obtained via the internet.

5

a motion for new trial so Morales would have to provide the documents concerning the parents' financial status. 3RR Ptf. Exhibit A-1, p. 19. Aguilar stated he wanted the financial records and would be happy. 3RR Ptf. Exhibit A-1, p. 20.

**Subsequent facts supporting intent of Aguilar in filing the case in the 327th District Court to obtain financial information.**

On October 31, 2012 a hearing was held before the trial court. 1RR. During the hearing Aguilar advised the Court he had received a copy of the order transferring the case on October 30, 2012. 1RR 7, 8. The Court was advised the 327th District Court had not received the transfer order. 1RR 7, 8.

Aguilar informed the trial court Morales had stated she would provide documents concerning the financial affairs of the deceased parents but had not done so. 1RR 13.

The trial court stated the court had a method to obtain the financial information but it was never instigated. 1RR21.

Counsel for Morales, William Leighner [Leighner], stated he would provide all the financial information by November 15, 2012. 1RR 36. He said Morales would produce all the financial records including checks, everything. 1RR 40 49.

The Court said Morales was going to provide a spreadsheet within 15 days so there appeared to be no problem. 1RR 47, 61.

6

By letter dated November 2, 2012 Aguilar offered to have all issues resolved in mediation. CR 325. The offer was declined. CR 325.[3]

Aguilar stated if Morales had provided the documents within the 15 days stated by her attorney the events of the case would have dramatically changed. 3RR 92.

Another hearing was held on December 5, 2012. 2RR. No spreadsheet or other financial information had been provided by Morales as promised by her counsel Leighner on October 31, 2012. 2RR 1 thru 57.

On January 11, 2012 the trial court entered a sanctions order dismissing the transferred case without holding a hearing.[4] CR 399.

On September 10, 2014 this Court reversed the sanctions issue and remanded the case back for an evidentiary hearing on Aguilar's intent in filing the lawsuit in the 327th District Court. Supp. CR 30, 32.

On November 4, 2014 Aguilar filed a verified supplement to response to motion for sanctions. CR. 469-478. In the verified supplement Aguilar laid out what he knew concerning facts he knew prior to the filing of the lawsuit in the

---

[3] Morales has objected to any mediation. See 4-13-00038-CV, 04-13-00367-CV, 04-13-00368-CV, 04-13-00425-CV, 04-13-00690-CV and 04-13-00815-CV.

[4] The Order says the3 transferred case was dismissed due to a Plea to Jurisdiction. CR 401. However, no proper Plea to Jurisdiction was filed by Morales. Supp. CR 1 thru 14. The alleged Plea to Jurisdiction was a verified plea as to capacity to use. CR 40-41. The Order states the transferred case was dismissed but if dismissed after the transfer the trial court has no jurisdiction over the Estate. The issue is discussed in Issue Fourteen below.

7

327th Judicial District Court, CR 471-477, for use by the trial court to determine if the proper factual and legal work had been done prior to filing the lawsuit. The verified pleading stated:

Aguilar did a reasonable inquiry prior to filing the case in 2012-DCV-05856 and there was a basis for the petition in law and in fact. He had personal knowledge of the following facts. CR 471.

Aguilar knew Ramiro Aguilar, Jr. had control of property located at 6717 Alameda, El Paso, El Paso County, Texas. CR 471. Aguilar was told by Margaret Morales that the property belonged solely to Ramiro Aguilar, Jr.; that she wanted the property as part of her inheritance. CR 471. Aguilar knew the property had belonged to Ramiro Aguilar, Sr. and Margarita Aguilar the parents of Ramiro Aguilar, Jr. Roberto Aguilar, Amparo Aguilar, Arturo Aguilar and Norma Aguilar. CR 471. Aguilar knew no federal income tax returns had been filed listing the income and expenses relating to the property. CR 471. By not filing the income tax returns, a task entrusted to Margaret Morales by Ramiro Aguilar, Jr., she had breached her fiduciary duties since she held a power of attorney executed by Ramiro Aguilar, Jr. CRR 471. Aguilar knew there was not going to be a complete accounting because Margaret Morales had been given an opportunity in August 2012 to provide information on an accounting and provided one sheet of paper. CR 471. She was told prior to the filing of the Application to probate the Will she

8

would have to give a complete accounting.  CR 471.  Her response was "We'll see."  CR 471.

Aguilar knew Margaret Morales retained a law firm to handle the probate proceedings and the attorney would not sue Margaret Morales in her individual capacity.  CR 472.  Margaret Morales had informed Aguilar in 2010 that there was a Smith Barney account in favor of Ramiro Aguilar, Jr and A. M. Aguilar.  CR 472.  CR 472.  She told Aguilar the account had $2,650,000.00 in the account.  CR 472.  She said the account had lost 30% of its value in the stock market crisis in 2008.  CR 472.  In August 2012 she told Aguilar the account had $437,000.00 and she would not explain the reason for the discrepancy.  CR 472.  She had previously told Aguilar she had to pay $322,000.00 costs for the schooling of her son at Boston College.  CR 472.  At one juncture she didn't know how she was going to get the money.  CR 472.  At the next juncture the costs had been taken care of.  CR 472.  Aguilar knew the salary received by Morales and her husband.  CR 472.  He saw that they were spending way, way over their income.  CR 472.

Aguilar knew Margaret Morales had stolen money from Sun City Salvage Pool, Inc. because he handled an audit for the company and found the missing funds.  CR 472.  He knew Margaret Morales used the credit cards in favor of either Ramiro Aguilar, Jr. and\or A. M. Aguilar to make purchases for her personal use.  CR 472.  He knew a $100,000.00 diamond ring belonging to A. M. Aguilar had

9

been stolen but Margaret Morales refused to have any investigation done to determine who stole the ring. CR 472. Her actions led Aguilar to believe Margaret Morales stole the ring because before the ring was reported missing Margaret Morales needed monies and was asking Aguilar for a loan. CR 472. But after the ring was missing she had access to large sums of money and didn't need a loan. CR 472. Aguilar had lent Margaret Morales money to hide the fact she had overspent monies in her and her husband's bank account. CR 472. Aguilar had been told by both Ramiro Aguilar, Jr. and A. M. Aguilar that Margaret Morales was stealing their money. CR 472.

In 2010 Ramiro Aguilar, Jr. and A. M. Aguilar were planning to move from San Antonio, Texas to El Paso, Texas with the intended move to occur in January 2011. CR 473. Margaret Morales had an argument with Ramiro Aguilar, Jr. about finances. CR 473. She refused to provide him with any information. CR 473. He shortly thereafter had a stroke which disabled him and stopped any moving to El Paso, Texas. CR 473. Margaret Morales complained that caring for Ramiro Aguilar, Jr. was costing $100,000.00 and that it was needless money being spent since he was going to die anyone. CR 473. On more than one occasion she was asked to provide an accounting so it could be given to A. M. Aguilar. She always came up with excuses and would not provide the accounting. CR 473.

Morales stated she kept monthly records of income and expenditures for

Ramiro Aguilar, Jr. and A. M. Aguilar. CR 473. She said their expenditures were $25,000.00 a year more than their income. CR 473. Aguilar knew about the sale of Sun City Salvage Pool, Inc. to CoParts, Inc. since he handled part of the sale. CR 473. He also knew about the finances of Ramiro Aguilar, Jr and A. M. Aguilar when they lived in El Paso, Texas. CR 473. He knew Ramiro Aguilar, Jr. was to always have $25,000.00 in his checking account since he was told so by Ramiro Aguilar, Jr. and A. M. Aguilar. CR 473.

Before and during the time period from December 2010 through July 2012 Margaret Morales was abusive to Ramiro Aguilar, Jr. and A. M. Aguilar. CR 473. She also physically beat her grandchild Dylan Estrada for no reason. She stated to Aguilar she believed she was losing her mind. CR 473.

During the time period from December 2010 through July 2012 A. M. Aguilar requested an accounting from Margaret Morales but was never given an accounting. CR 473. A. M. Aguilar told Aguilar in July 2012 that Morales had told her there was no money to support her, A. M. Aguilar, because all their money had been spent. CR 473-74. Aguilar told A. M. Aguilar not to be concerned that there would be money to care for her in the style she was accustomed to and Morales would have to explain what happened to her and her husband's money. CR 474. Unfortunately, she died in August 2012 due to the negligent acts of Morales in her zeal to get back to San Antonio, Texas to obtain control of a sum of

11

money in excess of $400,000.00. CR 474.

In the 1970's Margaret Morales told Aguilar she didn't care what the Wills of Ramiro Aguilar, Jr. and A. M. Aguilar stated. She intended to divide the inheritance between herself and her sister Teri. CR. 474.

In 2011 Morales stated Michael Aguilar did not need any inheritance although he has a number of physical ailments and would need the money for health care. CR 474. She stated he could be placed in a Veteran's Administration facility and the government could take care of him; that there was no reason to waste any inheritance on him. CR 474. She stated Aguilar shouldn't get any of the inheritance because he had too much money anyway and didn't need any of the inheritance. CR 474. She stated she would take whatever steps were necessary to not divide the inheritance according to our parents' wishes because she and her husband would not have anything in their old age. CR 474. Aguilar knew Morales would hide information. CR 474. For example she failed to disclose the pregnancy of her daughter until a health issue arose. CR 474. She failed to disclose the arrest of her son until the medical board refused to issue him a medical license. CR 474. Aguilar's expectation was she would fail to disclose the information concerning his parent's assets and liabilities. CR 474. It would fit her pattern. CR 474.

In 2011, she and her husband asked me how to handle the sale of some stock

given to the husband by CoParts because they needed the money. CR 474. I explained it to her. CR 474. She had previously sold a Corvette because she said she needed money. CR 474-75. But once she gained control of the assets of Ramiro Aguilar, Jr. and A. M. Aguilar her monetary needs diminished although the costs of her lifestyle had increased. CR 475. Aguilar observed the spending habits of Morales, her husband, her daughter and her son and concluded there was no way only the money paid to Morales as salary and the money paid to her husband as salary was supporting their lifestyle. CR 475. Too much money was being spent. CR 475. I went to H.E.B. with Morales and her purchases were charged to a credit card in my parent's name. CR 475. She took money from me that I left when I visited my parents in San Antonio. CR 475.

Aguilar had handled a case wherein the 8th Court of Appeals stated a person didn't have to be appointed by a probate court as representative of an estate; that the proceeding could go forward accordingly. CR 475.

Prior to filing the lawsuit in 2012-DCV-05856 I checked with a probate attorney to determine if I could file the case in El Paso County, Texas and was advised I could since the subject property is located in El Paso County, Texas. CR 475. I also did research about filing the case in a district court. CR 475. I checked to ascertain if there was a legal basis for the facts presented and the lawsuit. CR 475. The research showed there was a legal basis for the lawsuit. CR 475. To this

day I have not been allowed any discovery in any proceeding although Morales provided two 3 inch binders of documents which showed that since 2008 she had stolen at least $490,000.00 from Ramiro Aguilar, Jr and\or A. M. Aguilar, a fact noted to the trial court to no avail.  CR 475.  Affidavits have been submitted by parties stating they knew Margaret Morales was stealing from Ramiro Aguilar, Jr. and\or A.M. Aguilar.  CR 475.  Subsequent to the January 2013 order I have learned substantially more about Morales' activities.  CR 475.  None of the new information is beneficial to her.  CR 475-76.

There was no malice, ill-will or harassment on Morales.  CR 476.  Aguilar wanted the accounting so all heirs would know the status of each estate.  CR 476. No pleadings were filed in bad faith.  CR 476.  The objective was to get Morales to explain what happened to the monies owned by Ramiro Aguilar, Jr. and to remove the potential of each of the other heirs having to pay the taxes, penalties, interest and other expenses to the Internal Revenue Service for the 6717 Alameda, El Paso, Texas property.  CR 476.  The assumption was the El Paso court would order that she provide the information since the 327th District Court would push for full, complete disclosure. CR.476. That is why the original petition in 2012-DCV-05856 contained requests for disclosure.  CR 476.

All the claims in the pleading were based upon personal knowledge and had a basis in law.  CR 476.  There shouldn't be any sanction for a proper pleading

14

requesting court intervention. CR 476. It is still my belief that if the case had been tried before a jury the result would have been the same as the default judgment. CR476.

Morales failed to serve a copy of the transfer order to Aguilar concerning 2012-DCV-5856. CR 476. After the entry of the default judgment Aguilar by letter dated November 2, 2012 suggested mediation of the matter. It was refused. Seven offers of mediation have thus far been refused. CR 476.

Attached to and incorporated for all purposes was a copy of the transcript of the default judgment hearing in 2012-DCV-05856. CR 476. It shows Judge Chew questioned her jurisdiction and was provided with case law supporting the jurisdiction. CR 493 thru 497. A review of the entire transcript shows Aguilar was using the default judgment to get Morales into a situation of having to provide information concerning assets and liabilities of the parents. CR 498. Judge Chew indicated she would be prone to granting a new trial if Morales filed an appearance. CR 499. Aguilar did not object because it would lead to providing the opportunity of obtaining relevant information, complete information that to this day has not been provided. CR 477. No motion for new trial was filed. CR 477. There was no subterfuge in the default judgment hearing nor was Judge Chew misled. CR 477. The case could have been tried in the probate court except that Morales wanted to use the court to hide the information. CR 477. She alleges she

had provided all the information but the statement is not true. CR 477. Once the integrity of Judge Chew was attacked Aguilar decided to fight to maintain her integrity. CR 477. She had not done anything wrong. CR 477.

Since the court has imposed a death penalty sanction any monetary sanction is excessive. CR 477. Morales does not owe the Estate $3,715,000.00. CR 477. Aguilar has been denied his right to prosecute 2012-DCV-05856 even though the pleadings have factual and legal merit. CR 477.

No response or objection was filed. The verified statements were not contested. CR 731-743.

A hearing on the sanction's motion was held on December 11, 2014. 3RR.

During the hearing Leighner stated the hearing concerned Aguilar filing the case in El Paso and the events that occurred in the 327th District Court., 3RR 13-14.

Prior to the commencement of the hearing Aguilar filed a Plea to Jurisdiction. CR 696. He stated the trial court did not have jurisdiction to impose sanctions for any matter occurring in the 327th District Court. The trial court denied the Plea to Jurisdiction. CR 717.

Aguilar subpoenaed Morales to appear. CR 713. A Motion for Protective Order and to Quash Subpoena was filed. CR 711. Leighner admitted prior

16

subpoenas directed to Morales had been quashed. 3RR 15. Leighner stated he would not, and has not, agreed to Aguilar taking Morales' deposition. 3RR 65.

Prior to the presentation of any evidence on Morales' behalf, Aguilar objected because Morales had not provided requested discovery material. CR 646-648, 3RR 13.

Aguilar also requested a jury trial but it was denied. CR 718.

During the hearing Leighner attempted to offer into evidence documents that did not reflect the docket sheet from the case in the 327th District Court on October 29, 2012. CR 479-80, 3RR Movant's Exhibit 1, 3RR 30. Aguilar objected. 3RR 30. Aguilar pointed out to the trial court neither he nor Judge Chew knew about any transfer order. 3RR 35.

The letter from Leighner to the El Paso District Clerk verifies no copy of the transfer order was mailed to Aguilar. CR 656. Aguilar testified the only reason there was a hearing on any matter was because Leighner failed to serve him with a copy of the signed transfe3r order. 3RR 84.

The hearing proceeded. The matters discussed involved events that occurred in the 327th District Court, 3RR 37-50, 86. Aguilar testified his intent in filing the lawsuit in the 327th District Court was to protect the Estate's interests. 3RR 67.

Leighner then discusses the theft by Morales of $490,000.00. 3RR 54-55. He doesn't dispute the taking of monies by Morales. 3RR 54-55.

Aguilar stated in clear terms his intent in filing the El Paso case was to use Texas law to obtain information and to advance a case like you're entitled to do in Texas. 3RR 93.

Leighner provided an affidavit of events for attorney fees, 3RR 50, but Aguilar objected, 3RR 51, since he had not been provided the right to review of the backup material allowed under Texas Rule of Evidence 1006. 3RR 52. The trial court admitted the affidavit anyway. CR 52. Leighner stated the attorney fees were incurred in defending the lawsuit in the El Paso case. 3RR 101-02. The trial court allowed Leighner to send something to show an amount for attorney fees after the hearing was closed. 3RR 105.

## SUMMARY OF THE ARGUMENT

1. The trial court could not impose sanctions for relying on events that occurred in the El Paso lawsuit.

2. The trial court could not impose monetary sanctions when it had already imposed death penalty sanctions by dismissing the El Paso case after it had been transferred.

3. The trial court could not impose monetary sanctions because such sanctions are a lesser included sanction to the death penalty sanction.

18

4. The trial court imposed monetary sanctions when Leighner failed to provide the backup information required by Texas Rule of Evidence 1006.

5. The trial court imposed the amount of the monetary sanction relying on evidence that was provided after the hearing on the sanctions motion.

6. There is no evidence of malicious intent on Aguilar's part for filing the El Paso lawsuit.

7. Everything Aguilar did in filing the El Paso lawsuit is allowed under Texas law including attempts to obtain information from the executrix of the Estate which she has a duty to provide.

8. The trial court improperly sustained objections to evidence offered by Aguilar that went to his intent in filing the El Paso lawsuit.

9. The trial court said the 327th District Court did not have jurisdiction while this Court said the transfer order voided the judgment entered by the 327th District Court even though this Court has also stated a transfer order was a venue statute.[5] Aguilar submits a venue statute does not deprive a court of jurisdiction.

10. The trial court failed to explain why lesser included sanctions could be imposed since it had already imposed death penalty sanctions.  CR 399-401, 720-22.

---

[5] *In the Estate of Alvilda Mae Aguilar*, _____S.W.3d_____, 2014WL4438085, 04-13-00815-CV (Tex.App.—San Antonio 2014, no pet.) at p. 2.

19

11. The trial court could not impose sanctions because it said it lacked jurisdiction over the transferred case. CR 401.

This Court noted that it did not see where Morales in her capacity as executrix of the Estate of Sandy had filed a lawsuit against Morales in her individual capacity.[6] That is the crux of the problem. The trial court seems to be assisting Morales so the breach of fiduciary duty will go unpunished.

Aguilar knew Morales had stolen money from Ray and Sandy. CR 71-84. He knew about her theft of monies from a corporation owned by Sandy. CR 82, 3RR 22. Other people also knew. CR 77, 78-79, 83-84.

Aguilar speculated, correctly, that Morales would do something so she did not provide information about monies she had taken. CR 136. He even sent an email stating there might be a problem with Morales. CR 241.

The four siblings met on August 13, 2012 and Morales failed to provide information which she swore she would provide. Two days later she decided to hire another attorney to handle the two Estates but fails to notify Aguilar. CR 136.

Aguilar, based upon the hope Morales would respect her parents, prepared the necessary documents for filing in the probate court. CR 8. Morales waited until the Friday before the hearing on the applications to inform Aguilar she had

_____

[6] *Id* at p. 3.

20

retained other counsel. CR 136. Bayern, although retained sometime before September 14, 2012, failed to notify Aguilar about his being hired.

Aguilar filed a lawsuit in El Paso County on September 19, 2012 as representative of the Estate of Ray. CR 22-26. He did so after handling a case where the 8th Court of Appeals stated it was not always necessary to be appointed representative of the Estate. 3RR25-26. Aguilar was convinced Morales as executrix was not going to sue Morales individually just as this Court stated.[7] The necessary factual investigation was performed prior to filing the lawsuit. 3RR 63. The legal research was done prior to filing the lawsuit. 3RR 63. As noted in the original petition requests for disclosure was requested. CR 67-69. It was the first legal proceeding to obtain allowed discovery.

Morales was served with citation for the El Paso case. A motion to transfer was filed. An ex parte hearing was held with Bayern and Leighner appearing as attorneys for Morales. Once the order transferring the case was signed Leighner failed to provide a copy to Aguilar. CR 102.

The default judgment hearing was held in the El Paso case. Neither the presiding judge, her bailiff nor Aguilar knew about the transfer order. 3RR

Aguilar appeared on October 31, 2012 in the trial court. The day before, by happenstance, he found out about the transfer order. 1RR 5.

---

[7] *In the Estate of Alvilda Mae Aguilar*, *supra*, at p. 3.

Leighner represented to the trial court that Aguilar would be provided with a spreadsheet by November 15, 2012. Aguilar elected to wait and see if the spreadsheet was provided as represented or if Leighner was making misrepresentations to the trial court. No spreadsheet has been provided to this date so Aguilar's assumption counsel for Morales was lying has been proven correct.

On November 2, 2012 Aguilar suggested the parties go to mediation. The offer was rejected by Morales as has subsequent offers.

The trial court imposed death penalty sanctions by dismissing the transferred case. The basis for the dismissal was for events that occurred in the El Paso case. It did not hold any hearing on the matter. It dismissed the case and entered further monetary sanctions. The case was appealed. This Court affirmed the transfer order and said the judgment from the 327th Judicial District Court was void due to the transfer order but reversed the sanction issue.

On December 12, 2014 the trial court entered lesser sanctions in addition to the previous death penalty sanction relying on events that occurred in the El Paso.

This Court stated the issue on remand was Aguilar's intent in filing the El Paso case. The order imposing sanctions doesn't address the intent issue. Rather, it states the acts in the El Paso case were baseless. The trial court awarded attorney fees without having any proper evidence before and after Aguilar had objected to violation of Texas Rule of Evidence 1006. It didn't

matter.  The trial court relied on some information provided after the hearing had terminated.

**ARGUMENT and AUTHORITIES**

**ISSUE ONE:** Did the trial court have jurisdiction to impose sanctions for events that occurred in the 327th District Court?

STANDARD OF REVIEW: *De novo.  Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of San Antonio v. Estrada*, 219 S.W.3d 28, 31 (Tex.App.—San Antonio 2006, no pet.).

 In reviewing sanctions orders, this Court is not bound by a trial court's findings of fact and conclusions of law; rather this Court must independently review the entire record to determine whether the trial court abused its discretion.  *Johnson v. Chesnutt*, 225 S.W.3d 737, 741 (Tex.App.—Dallas 2007, pet. denied); *Butan Valley N.V. v. Smith*, 921 S.W.2d 822, 827 (Tex.App.—Houston [14[th] Dist.] 1996, no writ).

 Aguilar refers the Court to the Motion for Sanctions on file.  CR 699-701.  The basis for the sanctions motion is for events that occurred in El Paso County, Texas.  Leighner stated to the trial court the reason for imposing sanctions was due to events that occurred in the 327th District Court.  3RR 13-14.

 Aguilar filed a Plea to Jurisdiction, CR 696-711, which was overruled thus preserving error.  CR 717.

 The trial court stated in its Order

1. Aguilar lacked standing to sue or take any action on behalf of the Estate of Ray, CR 720;

2. That on August 12, 2012 Aguilar, as attorney of record for and on behalf of Morales, filed an Application to Probate Will and For Issuance of Letters Testamentary with this Court and that Aguilar was aware of the appointment and qualification of Morales as Independent Executrix of the Estate CR 720;

3. That on October 4th and 5th of 2012 Aguilar did knowingly and intentionally misrepresent himself as the "Representative of the Estate of Ray" and the Attorney for the Personal Representative of the Estate of Ray in issuing deposition Notices to Rene Daniel Pena, Mary de La O, Morgan Stanley and Susan Enger seeking and purporting to obtain personal and financial information regarding Morales and the Estate of Ray through misrepresentation of himself as being the Person Representative of said Estate, CR 720-21;

4. That on October 29, 2012, and with full knowledge and notice of this court's October 10, 2012 Transfer Order, the pending *Plea to the Jurisdiction* and the *Original Answer* which were both filed by Morales on October 12, 2012, Aguilar wrongfully and intentionally pursued and obtained a fictitious Default Judgement against Morales in his *Original Petition* before the 327th District Court of El Paso County, Texas in Cause No. 2012-DCV-05856. CR 721.

24

5. The court further finds that said Default Judgment was entered without jurisdiction and is therefore void, rendering further action by this court unnecessary. CR 721.

6. The court further finds that the *Original Petition* filed by Aguilar had no basis in law or fact and not [sic] warranted by good faith argument for the extension, modification, or reversal of existing law, and the subsequent presentment of that Original Petition to the El Paso County District Court for Default Judgment was a gross and intentional misrepresentation to that Court and done with purposeful intent to harass Morales by way of the egregious Default Judgment, CR 721.

7. The Court further finds that Aguilar caused Morales to unnecessarily incur costs and attorneys' fees in the amount of $34,005.91. CR721.

The only mention of intent is that Aguilar intended to harass Morales, ¶ 6 above.

This Court rendered its opinion in *In re Estate of Ramiro Aguilar, Jr.*, 435 S.W.3d 831 (Tex.App.—San Antonio 2014, pet. denied) reversing the sanctions issue for a hearing on the intent of Aguilar in filing the lawsuit in the 327th District Court. Supp. CR 17 thru 32.

This Court and the Dallas Court have discussed the jurisdiction issue.

In *Mantri v. Bergman*, 153 S.W.3d 715, 716-717 (Tex.App.—Dallas 2005, pet. denied) the Dallas Court was presented with the issue of whether or not sanctions for frivolous litigation could be brought in an independent lawsuit in a different court and county. The Court stated any sanctions motion had to be filed and heard in the Court where the alleged sanctionable actions occurred. *Ibid*, at 718.

This Court faced the same issue in *Alanis v. Valdespino*, _____S.W.3d _____, 2012WL1865498, 04-11-00122-CV (Tex.App-San Antonio 2012, no pet.). The Court discussed *Mantri, supra*, and *Greene v. Young*, 174 S.W.3d 291, 294 (Tex.App.—Houston [1st. Dist.] 2005, pet. denied). In *Greene* the issue was whether or not a family court could enter sanctions based on a motion filed in bankruptcy court. The Houston court said any sanction had to be brought in the bankruptcy court. This Court agreed with *Mantri* and *Greene* and said "A claim that a pleading filed in a court is groundless must be asserted in the cause in which the pleading is filed not as a separate cause of action in a different lawsuit."

Morales is going to argue the sanctions were imposed in the same lawsuit because of the transfer order, a transfer order that was not served by Leighner on Aguilar in violation of TEX. R. CIV. P. 21a, that was unknown to the 327th District Court; and that was signed at an ex parte hearing on October 10, 2012.

26

Lack of notice has been discussed by a number of courts including the United States Supreme Court. The Court said failure to give notice violates the most rudimentary demands of due process. *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed. 62 (1965). Yet the lack of notice did not matter to the trial court.

Lack of notice was discussed in *Gutierrez v. Lone Star National Bank*, 960 S.W.2d 211 (Tex.App.—Corpus Christi 1997, pet. denied). In *Gutierrez* the notice of intent to dismiss was sent to Lone Star. The letter did not indicate it was sent to Gutierrez. The docket sheet contained no entry regarding the dismissal hearing.

As in *Gutierrez*, the letter sending documents to the El Paso District Clerk show Leighner sent copies to Bayern but not Aguilar. CR 102. The docket sheet in 2012-PC-2800 does not show any notice of the order transferring the case was sent to Aguilar. CR 731-743, 3RR 31

The failure to serve Aguilar with a copy of the order transferring the case is subject to sanctions, TEX. R. CIV. P. 21, *Union City Body Co., Inc. v. Ramirez*, 911 S.W.2d 196, 200 (Tex.App.—San Antonio 1995, orig. proceeding), so Morales cannot rely on the sanctionable conduct of Leighner as a basis for sanctions on Aguilar.

Morales' argument is akin to the argument this Court could impose sanctions for events that occurred before the 8th Court of Appeals or even the Supreme Court. The sanction order does not state Aguilar did any sanctionable act in the trial court.

All the alleged violations involved actions listed in the December 12, 2014 Order, CR 720-22, were done in the 327th District Court. The trial court lacked jurisdiction. *Alanis, supra, Mantri, supra,* and *Greene, supra.*

**ISSUE TWO:** The trial court could not impose monetary sanctions, a lesser included sanction, when it already had imposed death penalty sanction by dismissing the transferred case.

STANDARD OF REVIEW: Abuse of discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986).

### ARGUMENT and AUTHORITIES

The purpose of sanctions is to secure the parties compliance with the rules, punish those that violate the rules, and deter other litigants from violating the rules. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992); *Bodnow,* 721 S.W.2d at 840.

Sanctions must be just. *Paradigm Oil, Inc. v. Retamco Oper., Inc.*, 372 S.W.3d 177, 184 (Tex.2012); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003). *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex.1991) set out a two-part test for determining whether a particular sanction is

28

just. There must be a direct nexus among the offensive conduct, the offender and the sanction imposed. Just sanctions must not be excessive. A sanction imposed should not be more severe than necessary to satisfy its legitimate purposes. *Id* at 917.

A death penalty sanction is of particular concern because the trial cou7rt renders judgment without addressing the merits of the case. *Hamill v. Level*, 917 S.W.2d 15, 16 (Tex.1996).

The sanctions must be directly related to the offensive conduct. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex.2006).

The sanction must not be excessive; it should be no more severe than necessary to promote full compliance. *Paradigm Oil*, 372 S.W.3d at 187.

Generally, the trial court must use a lesser sanction first to determine whether it is adequate to secure compliance, deterrence, and punishment of the offender. *Chrysler*, 841 S.W.2d at 849.

A death penalty sanction is one that has the effect of adjudicating the dispute without regard to the merits. *TransAmerican*, 811 S.W.2d at 918. Death penalty sanctions include dismissal. *Hernandez v. Mid-Loop, Inc.*, 170 S.W.3d 138, 144 (Tex.App.—San Antonio 2001, no pet.).

For death penalty sanctions to be appropriate the party's conduct just justify the presumption that its claims or defenses lack merit. *Paradigm Oil*, 372 S.W.3d at

29

184.

A groundless pleading is one that has no basis in law or fact and is not warranted by a good-faith argument for the extension, modification, or reversal of existing law. TEX. R. CIV. P. 13; *GTE Comms. Sys. v. Tanner*, 856 S.W.2d 725, 730 (Tex.1993). The standard is objective: Did the party make a "reasonable inquiry" into the legal and factual basis of the claim? *Lake Travis ISD v. Lovelace*, 243 S.W.3d 244, 254 (Tex.App.—Austin 2007, no pet.). To decide whether the investigation was reasonable the court looks to the facts available to the litigant and the circumstances at the time the party filed the pleading. *Tarrant Cty. v. Chancey*, 942 S.W.2d 151, 155 (Tex.App.—Fort Worth 1997, no writ).

A groundless pleading is not sanctionable unless it was brought in bad faith or for the purpose of harassment. *GTE*, 856 S.W.2d at 731. Bad faith is more than mere bad judgment or negligence; it is motivated by dishonest, discriminatory, or malicious purposes. *Estate of Davis v. Cook*, 9 S.W.3d 288, 298 (Tex.App.—San Antonio 1999, no pet.). It is the burden of the party requesting to prove the pleading party's subjective state of mind.

The party that filed the motion for sanctions must first prove the allegations in its motion. *GTE,* 856 S.W.2d at 731.

The imposition of sanctions should not prevent a decision on the merits of the case. *TransAmerican,* 811 S.W.2d at 918.

The trial court dismissed the lawsuit against Morales. CR 401.

The dismissal order says the transfer order was filed on October 10, 2012 with the 327th District Court, CR 399, inferring Aguilar and Judge Chew knew about the transfer order. 3RR Ptf. Exhibit 5, attached exhibit 6. The docket sheet shows the transfer order was not filed prior to October 29, 2012.

The trial court imposed lesser sanctions on December 12, 2014. CR 721. Aguilar submits the trial court cannot now impose lesser a monetary sanction after imposing the death penalty sanction.

The trial court abused its discretion in imposing the monetary sanctions because it failed to follow the dictates of the Supreme Court in how sanctions are to be imposed. The Supreme Court does not say the trial court can begin with imposition of the death penalty sanction and then work its way backwards. Generally the trial court must use a lesser sanction first to determine whether it is adequate to secure compliance, deterrence, and punishment of the offender. *Blackmon*, 841 S.W.2d at 849.

**ISSUE THREE**: The trial court abused its discretion in imposing sanctions relying on a finding Aguilar lacked standing to sue or take other action on behalf of the Estate of Ramiro Aguilar, Jr.

STANDARD OF REVIEW: Abuse of discretion. *Bodnow*, 721 S.W.2d at 840.

**ARGUMENT and AUTHORITIES**

31

Aguilar incorporates by reference as if fully stated herein his argument and authorities stated in Issues One and Two above.

Aguilar submits the trial court is mixing standing with capacity. Morales filed a verified plea as to capacity, not standing. CR 40. A person has standing if he is personally aggrieved, regardless of whether he has legal authority to act; a person has capacity if he has the authority to file suit, regardless of whether he has a justiciable interest in the suit. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848-49 (Tex.2005). Aguilar has standing since he is an interest person, TEX. EST. CODE ANN. § 22.018, and because he could file the lawsuit under TEX. EST. CODE ANN. § 351.151(b).

As stated by this Court, Morales in her capacity as executrix of the Estate of Ray had not sued Morales individually. *In the Estate of Alvilda Mae Aguilar*, *supra*, at p. 3.[8]

Aguilar believes the Court will agree Morales cannot use her appointment as executrix of the Estate to hide her illegal activity toward the deceased and the other heirs. But that is exactly what is happening. Surely the Court does not believe an executrix is immune from legal action for misappropriation of property from a decedent prior to the decedent's death or that an executor can use his appointment to cover the theft.

---

[8] An interesting aspect of this is Aguilar could sue Morales in her individual capacity and then join her as a plaintiff in her executrix capacity.

The Last Will of Ray allowed Morales to be liable for her actions. CR 13-14.

The question presented is who has standing to sue Morales for her actual fraud, misapplication, gross negligence, or bad faith if the suing person has not been appointed representative of the Estate?

TEX. EST. CODE ANN § 355.202 says the naming of an executor in a will does not extinguish a just claim that the decedent had against the person named as executor. Morales is liable to the Estate for the monies misappropriated by her. TEX. PROB. CODE ANN. § 233(a) (repealed eff. Jan. 1, 2013), now TEX. EST. CODE ANN. § 351.151(b), says if the personal representative willfully neglects to use ordinary diligence required to collect all claims and recover possession of all property to which the estate has a claim, then the representative is liable on a suit by any person interested in the estate, for the use of the estate, for the amount of those claims or the value of the property lost by the neglect.

An interested person is defined as heir, devisee, spouse, or any other having a property right in or claim against the estate being administered. TEX. EST. CODE ANN. § 22.018. Aguilar, according to the cited statutes cited above, had standing to sue Morales to recover monies stolen by her from Ray during his lifetime. Aguilar has to file the lawsuit for the benefit of the Estate which means he is either the representative of the Estate or is suing for the benefit of the Estate. Either way the proceeds of the lawsuit go to the Estate even if the recovery is from a

33

beneficiary.

If there was a defect in the pleadings by Aguilar appearing as representative of the Estate of Ray, it was subject to motion to abate. *Coakley v. Reising*, 436 S.W.2d 315, 317 (Tex.1968).

A motion to abate is appropriate to challenge the name under which a person is sued or is suing. *Matthews Trucking Co. v. Smith*, 682 S.W.2d 237, 238-39 (Tex.1984).

Morales as executrix of the Estate could have alleged the lawsuit against her in her individual capacity had to have her named as a necessary party. *Allison v. National Un. Fire Ins.*, 703 S.W.2d 637, 638 (Tex.1986).

The finding Aguilar has no standing is an abuse of discretion and is in violation of TEX. EST. CODE ANN. § 351.151(b). Morales could challenge Aguilar's appearance as representative of the Estate a number of ways allowed under Texas law. Any defect in the pleading, assuming there is a defect, is no basis for sanctions. The trial court has to follow the statutes passed by the Texas Legislature and the cases decided by the courts of this State. To do otherwise the trial court is acting without reference to any guiding rules and principles.

**ISSUE FOUR**: The trial court abused its discretion in imposing sanctions relying on Aguilar representing himself as representative of the Estate of Ramiro Aguilar, Jr. in issuing deposition notices to various witness especially when the notices were issued before any motion to transfer was filed in the trial court.

34

STANDARD OF REVIEW:  Abuse of discretion.  *Bodnow Corp.*, 721 S.W.2d at 840.

## ARGUMENT and AUTHORITIES

Aguilar incorporates by reference as if fully stated herein his argument and authorities stated in Issues One and Two above.

TEX. R. CIV. P. 199 allows a party to take depositions of witnesses.  The taking of depositions is part of the discovery rules beginning at TEX. R. CIV. P. 190 thru 214.  Depositions are an accepted form of discovery.

Aguilar has stated repeatedly he wants information about his parents' respective Estates. Morales has fought against giving any discovery.  She filed motions to quash on October 12, 2012, CR 43, on November 25, 2012, CR 109, December 10, 2014.  CR 711.  She did not appear at the hearing on October 31, 2012, December 5, 2012 or December 11, 2014.  1RR, 2RR and 3RR.

She is a fiduciary to Aguilar.  Aguilar is a beneficiary under the Will of Ray. CR12-13.

The relationship between an executor and the estate's beneficiaries is one that gives rise to a fiduciary as a matter of law.  *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex.1996).  The fiduciary duties owed to the beneficiaries of the estate by an independent executor include a duty of full disclosure of all material facts known to the executor that might affect the beneficiaries' rights.  *Montgomery v. Kennedy*,

669 S.W.2d 309, 313 (Tex.1984). A fiduciary also owes the beneficiaries a high duty of good faith, fair dealing, honest performance, and strict accountability. *Ludlow v. DeBerry*, 959 S.W.2d 265, 279 (Tex.App.—Houston [14th Dist.] 1997, no writ).

Relying on the fiduciary duties present Aguilar should not have to file lawsuits against Morales nor should he have to attempt to collect information from any source other than Morales that he is entitled to as a matter of law.

Aguilar refers the Court to CR 141 where he sent a letter suggesting mediation; to his requests for mediation, all of which have been objected to, in 04-13-00038-CV, 04-13-00367-CV, 04-13-00368-CV, 04-13-00690-CV, 04-13-00815-CV, 04-13-00425-CV, to the Motions to Quash filed by Morales on October 12, 2012, CR 43, November 25, 2012, CR 109, and December 10, 2014. CR 711. And her nonappearance at the hearing held on October 31, 2012, or December 11, 2014. 1RR, 2RR and 3RR. Morales says she is being harassed but overlooks the mediation offers, the discovery requests, her appearance at hearings and her duty to provide Aguilar with requested information.

Morales will probably argue the deposition notices were subject to being quashed because they were filed in the El Paso case.

Her argument lacks merit because TEX. R. CIV. P. 88 says discovery shall not be abated or otherwise affected by pendency of a motion to transfer venue.

36

TEX. EST. CODE ANN. § 34.001 appears to being nothing more than a venue transfer statute. Hence, any reliance on the deposition notices as a basis for sanctions is misplaced. Aguilar was doing what he was entitled to do under Rule 88.

Aguilar submits the other point in this Issue is that the deposition notices were issued on October 4 and 5 of 2012. The issuance was before the ex parte order signed October 10, 2012 transferring the case and well before Aguilar knew about the order transferring the case on October 31, 2012. Each deposition notice was requesting information Morales is duty bound to provide as a matter of law. *Kennedy,* 669 S.W.2d at 313, *DeBerry*, 959 S.W.2d at 279. Again, the trial court is basing its sanction orders on matters that occurred in another court.

**ISSUE FIVE**: The trial court abused its discretion in imposing sanctions relying on Aguilar obtaining a default judgment when there is no evidence Aguilar or the 327th District Court knew about the October 10, 2012 ex parte transfer order prior to October 29, 2012.

**ISSUE SIX**: The trial court abused its discretion in imposing sanctions relying on Aguilar obtaining a default judgment when there is no evidence Aguilar wrongfully and intentionally pursued and obtained a fictitious Default Judgment against Margaret Anne Morales on his *Original Petition* before the 327th District Court.

STANDARD OF REVIEW: *De novo. Johnson v. Chesnutt*, 225 S.W.3d 737, 741 (Tex.App.—Dallas 2007, pet. denied); *Butan Valley N.V. v. Smith*, 921 S.W.2d 822, 827 (Tex.App.—Houston [14[th] Dist.] 1996, no writ).

**ARGUMENT and AUTHORITIES**

Aguilar incorporates by reference as if fully stated herein his argument and authorities stated in Issues One and Two above.

In reviewing sanctions orders, this Court is not bound by a trial court's findings of fact and conclusions of law; rather this Court must independently review the entire record to determine whether the trial court abused its discretion. *Johnson,* 225 S.W.3d at 741; *Butan Valley N.V,* 921 S.W.2d at 827.

TEX. R. CIV. P. 324(b) requires an appellant to file a motion for new trial when there is a question concerning sufficiency of evidence. The proceeding before the trial court was not a trial.

TEX. R. CIV. P. 13 says the court shall presume that all pleadings, motions and other papers are filed in good faith. The burden is on the party moving for sanctions to overcome the presumption. *GTE,* 856 S.W.2d at 731.

As movant in the motion for sanctions Morales was required to produce evidence the motion was brought in bad faith, to harass, or for other improper purpose. *Karlock v. Schattman*, 894 S.W.2d 517, 523 (Tex.App.—Fort Worth 1995, no writ); *Parker v. Walton*, 233 S.W.3d 535, 541 (Tex.App.—Houston [14th Dist. 2007, no pet.).

Aguilar refers the Court to the hearing held on October 29, 2012, 3RR, 3RR Ptf. Exhibit 5, attached exhibit 6 being the docket sheet in 2012-DCV-05856 printed October 30, 2012, 3RR Ptf. Exhibit 2, attached exhibit A-2, and 3RR Movant's

Exhibit 1 being Leighner's letter dated October 10, 2012 directed to the El Paso District Clerk which shows he did not send a copy of the order to Aguilar and the testimony in the hearing held on December 11, 2014. 3RR 1 thru 102.

Aguilar submits the record shows he has been attempting to obtain information from Morales, a fiduciary, but has been thwarted at every opportunity.

The Default Judgment was not fictitious. "Fictitious" implies fabrication. *Deleon v. State*, 105 S.W.3d 47, 51 (Tex.App.—El Paso 2003, no pet.). It was signed by a district court judge who had been duly elected and had the authority to sign a judgment. The problem was, again, Leighner's cavalier attitude of obtaining an ex parte transfer order and failure to provide Aguilar with notice of the transfer order. A review of 3RR Ptf. Exhibit 1 shows a hearing was held in the 327th District Court and a valid judgment, taking into consideration what was known to the Court and Aguilar at the time, was not fictitious. It was completely valid.

This Court stated the 327th judgment was void due to the transfer order. Supp. CR. 8. It said the transfer order deprived the 327th District Court of jurisdiction, Supp. CR. 8. But in *In re Estate of Alvilda Mae Aguilar*, _____ S.W.3d _____, 2014WL4438085, 04-13-00815-CV the Court discusses a transfer order under the Estate Code as a venue statute. A conflict in the law should not be a basis for sanctions.

Aguilar accepts that this Court evidently decided the 327th District Court did not

39

have jurisdiction under TEX. EST. CODE ANN. § 32.005 which grants exclusive jurisdiction subject to the exceptions contained in TEX. EST. CODE ANN. § 32.007 to a statutory probate court.

No special exceptions were filed in the El Paso lawsuit.

The original petition in the El Paso lawsuit could be read as an exception under TEX. EST. CODE ANN. § 32.007(5) meaning the 327th District Court did have concurrent jurisdiction and its default judgment was not void.

**ISSUE SEVEN**: The trial court abused its discretion in imposing death penalty sanctions.

**ISSUE EIGHT:** The trial court abused its discretion because it failed to offer a reasonable explanation as to the appropriateness of the death penalty sanction imposed.

**ISSUE NINE:** The trial court abused its discretion because it failed to offer a reasonable explanation as to the appropriateness of the monetary sanction imposed.

STANDARD OF REVIEW:  Abuse of discretion.  *Bodnow Corp.,* 721 S.W.2d at 840.

## ARGUMENT and AUTHORITIES

Aguilar incorporates by reference as if fully stated herein his argument and authorities stated in Issues One and Two above.

Aguilar refers the Court to CR 399 thru 401 and CR 620 thru 722 which are the two sanctions orders.

*TransAmerican*, 811 S.W.2d at 917 lays out a two prong test for imposition of

40

sanctions. First there must be a direct nexus among the offensive conduct and the sanction imposed. A just sanction must be directed against the abuse and toward remedying the prejudice to the innocent party and the sanction must be visited on the offender. Second, sanctions must not be excessive.

The imposition of severe sanctions is limited by constitutional due process. Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or callous disregard for the rules. *Id*, at 918.

Death penalty sanctions may be imposed only in exceptional cases where they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. *Cire v. Cummings*, 134 S.W.3d 835, 840 (Tex.2004).

A court must analyze the available sanctions and offered a reasonable explanation as to the appropriateness of the sanction imposed. ; thus a trial court is required to consider the availability of lesser sanctions before imposing death penalty sanctions. *Id; Spohn*, 104 S.W.3d at 883.

In all but the most egregious and exceptional cases, a trial court is required to test the effectiveness of lesser sanctions by actually implementing and ordering each sanction that would be appropriate to promote compliance with the trial court's orders in the case. *Id at* 842; *Chrysler*, 841 S.W.2d at 849.

**Death Penalty Sanctions. CR 399-401.**

The trial court did not consider imposing lesser sanctions other than the death penalty sanctions. As the Court noted in its opinion, the trial court did not even hold a hearing. There is no explanation why lesser sanctions would be ineffective.

**Monetary Sanctions. CR 720-722.**

The trial court did not consider lesser sanctions or even if monetary sanctions could be imposed due to the imposition of the previous death penalty sanctions. CR 720-22. The difficulty with the monetary sanctions was Aguilar could not pursue the transferred case in the trial court due to the death penalty sanction. If the case could be pursued Morales would have to provide discovery allowed under the discovery rules, TEX. R. CIV. P. 190 thru 214 and her duties as a fiduciary. *Kennedy,* 669 S.W.2d at 313, *DeBerry*, 959 S.W.2d at 279.

The monetary sanctions were after the death penalty sanctions had been imposed. Basically, the trial court is rewarding Morales with double sanctions. Aguilar has not been able to find any case stating double sanctions can be imposed for the same offense.

**ISSUE TEN:** The trial court abused its discretion in relying on the finding the 327th District Court lacked jurisdiction to enter the Default Judgment.

STANDARD OF REVIEW: Abuse of discretion. *Bodnow Corp.*, 721 S.W.2d at 840.

### ARGUMENT and AUTHORITIES

Aguilar incorporates by reference as if fully stated herein his argument and

42

authorities stated in Issues One and Two above.

This Court stated the 327th judgment was void due to the transfer order. Supp. CR. 8. It said the transfer order deprived the 327th District Court of jurisdiction, Supp. CR. 8. But in *In re Estate of Alvilda Mae Aguilar*, _____ S.W.3d _____, 2014WL4438085, 04-13-00815-CV (Tex.App.—San Antonio 2014, no pet.) the Court treats a transfer order as a venue order. Aguilar is not subject to sanction if there is a disagreement about a legal issue.

Aguilar accepts that this Court evidently decided the 327th District Court did not have jurisdiction under TEX. EST. CODE ANN. § 32.005 which grants exclusive jurisdiction subject to exceptions contained in TEX. EST. CODE ANN. § 32.007. No special exceptions were filed in the El Paso lawsuit. 3RR Ptf. Exhibit 5, attached exhibit 6. The original petition in the El Paso lawsuit could be read as an exception under TEX. EST. CODE ANN. § 32.007(5) meaning the 327th District Court did have concurrent jurisdiction and its default judgment was not void.

The Court has to again remember neither the 327th District Court nor Aguilar knew about the transfer order. 3RR Ptf. Exhibit 1, 3RR Ptf. Exhibit 2, and 3RR Movant's Exhibit 1, 2RR 27. Aguilar stated he first knew about the transfer order on October 30, 2012 at 4:15 p.m. 2RR 25, 3RR 90.

A reading of the original petition filed in the 327th District Court says Morales held a power of attorney from Ray. CR 22. It states that during the time she held a

43

power of attorney she collected monies, CR 22, and generally handled Ray's business. CR 23. It states Morales breached her fiduciary duty under the power of attorney. CR 23.

No special exceptions were filed.

The original petition could be read as an exception to the exclusive jurisdiction of Statutory Probate Court 2, Bexar County. TEX. EST. CODE ANN. § 32.007(5). This Court elected to read the original petition another way.

**ISSUE ELEVEN:** The trial court abused its discretion in relying on the finding the filing by Aguilar of the original petition in the 327th District Court was a gross and intentional misrepresentation to that Court and done with purposeful intent to harass Morales by way of the egregious Default Judgment.

STANDARD OF REVIEW: Abuse of discretion. *Bodnow Corp.*, 721 S.W.2d at 840.

## ARGUMENT and AUTHORITIES

Aguilar incorporates by reference as if fully stated herein his argument and authorities stated in Issues One and Two above.

TEX. CIV. PRAC. & REM. CODE ANN. §§ 9.011 and 10.001 have a good faith presumption that all pleadings are filed in good faith. *GTE,* 856 S.W.2d at 731; *Trimble v. Itz*, 898 S.W.2d 370, 373 (Tex.App.—San Antonio 1995) writ denied, 906 S.W.2d 481 (Tex.1995). The good faith presumption has been extended from TEX. R. CIV. P. 13. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex.2007).

Morales had to support her sanctions motion with competent proof that a

44

reasonable inquiry into the allegations of Aguilar's original petition would have disclosed that not all the allegations in his pleadings had or would have evidentiary support, and that Aguilar did not make a reasonable inquiry before filing suit. Incompetent evidence, surmise, or speculation will not suffice for the proof required. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex.2009).

Aguilar submits his original petition could not be for harassment for a number of reasons. First, Morales owed him a fiduciary duty to provide him with information since she was appointed executrix of the Estate and Aguilar was a beneficiary under the Last Will of Ray. CR 12-13, 16. The relationship between an executor and the estate's beneficiaries is one that gives rise to a fiduciary as a matter of law. *Huie,* 922 S.W.2d at 923. The fiduciary duties owed to the beneficiaries of the estate by an independent executor include a duty of full disclosure of all material facts known to the executor that might affect the beneficiaries' rights. *Montgomery*, 669 S.W.2d at 313. A fiduciary also owes the beneficiaries a high duty of good faith, fair dealing, honest performance, and strict accountability. *DeBerry*, 959 S.W.2d at 279.

Aguilar and his brother had filed a motion to remove Morales as executrix due to her misappropriation of monies and even attachment supporting affidavits. CR 71-84.

Aguilar has known Morales since here conception since they are siblings.

45

Aguilar had spoken with Ray and Sandy about their financial status before each of their deaths. 3RR76.

Aguilar testified Morales had given him figures on the assets of the Estate which he used in the default judgment hearing in the 327th District Court. 3RR Ptf, Exhibit 1 attached exhibit A-1, p. 6.

When some financial information was given by Morales, it showed she had stolen $490,000.00. 3RR 46.

Aguilar has attempted to mediate the dispute since November 2, 2012, CR 141, 04-13-00038-CV, 04-13-00367-CV, 04-13-00368-CV, 04-13-00690-CV, 04-13-00815-CV, and 04-13-00425-CV, to no avail.

Aguilar could not be making any misrepresentation because he was entitled to bring the lawsuit against Morales. TEX. EST. CODE ANN. § 351.151(b). She wasn't and won't sue herself although she is obligated to collect all debts owing to the Estate including debts owed by her in her individual capacity. TEX. EST. CODE ANN § 355.202.

**ISSUE TWELVE:** The trial court abused its discretion in admitting any evidence by Morales in the December 11, 2014 hearing because she failed to timely provide requested discovery and did not offer a good cause in the record for its admission

STANDARD OF REVIEW: Abuse of discretion. *In the Interest of F.R.K.*,

_____S.W.3d_____, 2000WL1060397, 04-09-00269-CV (Tex.App.—San

46

Antonio 2000, no pet.). Additionally, the admission of evidence must be more than harmless error. TEX. R. APP. 44.1(a).

## ARGUMENT and AUTHORITIES

Aguilar incorporates by reference as if fully stated herein his argument and authorities stated in Issues One and Two above.

At the hearing held on December 11, 2014, 3RR, prior to Morales presenting any evidence, Aguilar objected because TEX. R. CIV. P. 193.6 had been violated. 3RR 13. Aguilar had submitted requests for disclosure to Morales. CR 24-25. TEX. R. CIV. P. 193.6(a) says failure to make, amend, or supplement discovery responses in a timely manner may not introduce evidence , the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified unless the court finds either of two exception. Morales did not provide any good cause for admission of evidence by her. The trial court evidently denied the objection since it continued the sanction motion. 3RR 18.

The trial court allowed Leighner to provide evidence about attorney fees although Leighner had not been designated an expert witness nor had he provided any report 90 days prior to the close of the discovery period. 3RR 101.

The overruling of the objection is not harmless error because Morales had the burned of proof. *GTE,* 856 S.W.2d at 731.

47

**ISSUE THIRTEEN:** The trial court abused its discretion in admitting attorney fees evidence when a timely objection was made that Aguilar had not been provided with summaries required by TEX. R. EVID. 1006.

STANDARD OF REVIEW: Abuse of discretion. *In the Interest of F.R.K.*, _____S.W.3d_____, 2000WL1060397, 04-09-00269-CV (Tex.App.—San Antonio 2000, no pet.). Additionally, the admission of evidence must be more than harmless error. TEX. R. APP. 44.1(a).

### ARGUMENT and AUTHORITIES

Aguilar incorporates by reference as if fully stated herein his argument and authorities stated in Issues One and Two above.

Leighner was not designated as an expert witness pursuant to TEX. R. CIV. P. 194.2(f) even though requests for disclosure were timely filed. CR 67-69. Morales did not provide the documentation at least 90 days before the end of the discovery period. TEX. R. CIV. P. 195.2 (a). Leighner offered his affidavit as evidence of attorney fees. 3RR 50. Aguilar objected because the backup material was not provided in violation of Texas Rule of Evidence 1006. CR 96. The trial court overruled the objection. 3RR 96.

TEX. R. EVID. 1006 imposes three requirements before a summary of records may be admissible. The underlying records are voluminous, have been made available to the opponent for inspection and are admissible. *C.M. Asfahl Agency v. Tensor*, 1135 S.W.3d 768, 800 (Tex.App.—Houston [1st Dist.] 2004, no pet.).

48

The summary must be authenticated as an accurate and fair presentation of the underlying voluminous material. *Rodriguez v. State*, 90 S.W.3d 340, 373-74 (Tex.App.—El Paso 2001, pet. ref'd).

In *Dixon v. State*, 940 S.W.2d 192, 194-95 (Tex.App.—San Antonio 1996, no pet.) this Court stated the summary must be accurate. Leighner testified there were errors in the summary. 3RR 94-95, 96.

Then the trial court told Leighner to provide a figure after the hearing was closed. 3RR 105.

The affidavit concerning attorney fees was inadmissible in that Aguilar did not get to review the underlying documents and because Leighner stated the contents of the affidavit were not accurate. Hence, the evidence concerning attorney fees was inadmissible.

The admission of the affidavit and late evidence after the hearing was closed provided Morales with a basis for the recovery of an amount of attorney fees, an amount not proven by competent evidence.

The overruling of the objection was not harmless because without proper evidence of the amount of attorney fees the trial court could not award attorney fees.

**ISSUE FOURTEEN:** Once the trial court granted the plea to jurisdiction it lost any jurisdiction to enter a sanction order.

49

STANDARD OF REVIEW: *De novo. Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of San Antonio v. Estrada*, 219 S.W.3d at 31.

## ARGUMENT and AUTHORITIES

Morales filed a verified denial concerning capacity and standing for Aguilar to sue as representative of the Estate. She did not file a proper plea to jurisdiction. CR 40-41.

There was never a hearing on the alleged plea to jurisdiction. When a plea to jurisdiction challenges the pleadings, the Court determines if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex.Ass'n of Bus. V. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1996). The Court must construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

TEX. R. CIV. P. 93 covers capacity, not standing. It does not cover jurisdiction issues. The trial court granted a plea to jurisdiction, CR 401, although no proper plea to jurisdiction was before the trial court.

50

Standing is a constitutional prerequisite to filing suit. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex.2012). A court does not have jurisdiction over a claim made by a plaintiff who does not have standing to assert it. *Id.* Because standing is a component of subject-matter jurisdiction it cannot be waived and can be raised for the first time on appeal. *West Orange-Cove Consol. ISD v. Alanis*, 107 S.W.3d 558, 583 (Tex.2003).

If the Order granting the plea to jurisdiction was correct, the trial court stated it had no jurisdiction over the El Paso case which would include subsequent hearings on sanctions. If the Order granting the plea to jurisdiction was improper the El Paso case should be re-instated for further proceedings and Aguilar be allowed to amend his pleadings. *Brown*, 80 S.W.3d at 555.

The filing of the El Paso lawsuit as representative of the Estate of Ray is, at most, a misnomer because Aguilar could change the lawsuit naming himself as plaintiff for the benefit of the Estate. TEX. EST. CODE ANN. § 351.151(b).

A misnomer occurs when a plaintiff misnames himself or another party but the correct parties are involved. *Reddy Prtshp./5900 N. Freeway, L.P. v. Harris Cty. Appr. Dist.*, 370 S.W.3d 373, 376 (Tex.2012). A misnomer can be corrected. *In re Greater Houston Orthopaedic Specialist, Inc.,* 295 S.W.3d 323, 326 (Tex.2009).

Since the trial court found it had no jurisdiction over the transferred case it could not enter any sanction order.

## CONCLUSION

There is no basis for imposition of sanctions, either death penalty or monetary. Aguilar is entitled to information Morales refuses to provide although she has a fiduciary duty to provide it. There would be no necessity for the past litigation if Morales had provided the information she is duty bound to provide.

Morales as executrix is not going to sue Morales individually on a debt she owes the Estate. Aguilar is an interested person who can sue for the Estate. Whether he is as representative of the Estate or for the benefit of the Estate is not relevant. Whatever monies is recovered from Morales belongs to the Estate even though she is entitled to 1\4. She can't use her position as executrix to cover up her misappropriation of monies.

In the suit process, Aguilar is entitled to discovery of material from Morales either because of her fiduciary duties or the duties imposed by the Texas Rules of Civil Procedure. She cannot use her position as executrix to cover her misappropriation of assets belonging to the Estate. The trial court seems to do everything possible to shelter Morales. Aguilar and his brother have no other recourse but to appeal rulings entered by the trial court. There is no expectation the trial court will enter any order allowing Aguilar to obtain information concerning the Estate

## PRAYER

Aguilar prays this Court enter it judgment reversing and remanding to the trial court the January 11, 2013 death penalty sanction with directions the trial court set aside the death penalty sanction and the granting of the plea to jurisdiction and the transferred case proceed for further legal proceeding; and Aguilar prays this Court reverse and render, or reverse with directions to set aside, the December 12, 2014 monetary sanctions. Aguilar further prays all costs be assessed against Morales in her individual capacity not as executrix of the Estate of Ramiro Aguilar, Jr. and\or grant any other relief allowed under TEX. R. APP. 42.

Respectfully Submitted,

\s\ Anthony C. Aguilar_____
ANTHONY C. AGUILAR
PRO SE
11405 North Loop
El Paso, Texas 79927
(915) 858-0225
(915) 858-5051 fax
tonyaguilar@yahoo.com
Tex. Bar No. 00936000

## CERTIFICATE OF COMPLIANCE

The undersigned certifies pursuant to TEX. R. APP. 9.4(i)(2)(B) the number of words in the above Brief contains 12, 372 words.

\s\ Anthony C. Aguilar_____
ANTHONY C. AGUILAR

NO. 04-14-00898-CV
COURT OF APPEALS
FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

ANTHONY C. AGUILAR

Appellant,

vs.

MARGARET MORALES,

Appellee.

On Appeal from Cause No. 2012-PC-2800 from
Statutory Probate Court 2 of
Bexar County, Texas

## APPELLANT'S APPENDIX

ANTHONY C. AGUILAR
PRO SE
11405 North Loop
El Paso, Texas 79927-9523
(915) 858-0225
(915) 858-5051 fax
Tex. Bar No. 00936000
tonyaguilar@yahoo.com

# EXHIBIT ONE

# JANUARY 11, 2013 ORDER

| IN RE ESTATE OF | § | STATUTORY PROBATE COURT |
| | § | |
| RAMIRO AGUILAR, JR., | § | NO. 2 |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## ORDER SETTING ASIDE DEFAULT JUDGMENT; ORDER OF DISMISSAL; and ORDER GRANTING SANCTIONS

On the 5th day of December, 2013, came on for consideration the *Plea to the Jurisdiction; Motion to Show Authority; Motion to Set Aside Default Judgment* and *Motion For Sanctions* filed by MARGARET ANNE MORALES, an interested person pursuant to *Tex. Prob. Code Ann. §3(r)*, in the Estate of Ramiro Aguilar, Jr. ("Decedent") and named Defendant to the Original Petition filed by Plaintiff, Anthony Cleve Aguilar, a/k/a Tony Aguilar as Representative of the Estate of Ramiro Aguilar, Jr., in Cause No. 2012-DCV-05856 in the 327th District Court of El Paso County, Texas, and subsequently transferred to this court pursuant to *Tex. Prob. Code Ann. §5B* by this Court's Order of October 10, 2012 (Transfer Order). This matter was previously set to be heard on November 28, 2012 and, at the request of Anthony Cleve Aguilar, was reset for December 5, 2012. All Parties have been properly noticed and Anthony Cleve Aguilar appeared in person and Margaret Anne Morales appeared by and through her attorney of record, William E. Leighner. Having considered the pleadings, evidence presented and argument of counsel, the Court finds that Anthony Cleve Aguilar lacks the necessary standing to sue on behalf of the Estate of Ramiro Aguilar, Jr., and that on October 29, 2012, seventeen (17) days after the Transfer Order was filed under Cause No. 2012-DCV-05856 in the 327th District Court of El Paso County, Texas, with full knowledge and notice of this court's proceedings and the pending *Plea to the Jurisdiction* and the *Original Answer*

1

filed by Margaret Anne Morales on October 12, 2012, Anthony Cleve Aguilar appeared before the 327th District Court of El Paso County, Texas in Cause No. 2012-DCV-05856 to pursue and therein did obtain a Default Judgment against Margaret Anne Morales on his *Original Petition*. The court further finds that Margaret Anne Morales filed her Motion to Set Aside Default Judgment within thirty (30) days of the signing of the Default Judgment which extended the jurisdiction of this court pursuant to Tex. R. Civ. P. 329b and that said Default Judgment was entered without jurisdiction and is therefore **VOID**, and, to the extent necessary to effectuate such a finding, should be set aside in its entirety. The court further finds that the *Original Petition* filed by Anthony Cleve Aguilar had no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law, and the subsequent presentment of that Original Petition to the El Paso County District Court for Default Judgment was a gross and intentional misrepresentation to the Court and was done with purposeful intent to harass Margaret Anne Morales and cause her unnecessary expense; the Court further finds that Anthony Cleve Aguilar caused Margaret Anne Morales to unnecessarily incur costs and attorneys' fees in the amount of $16,059.63; that the Estate has sufficient funds to allocate such reimbursement to the distributable share of Anthony Cleve Aguilar; and that it is appropriate that Anthony Cleve Aguilar be required to reimburse such costs and fees and that the *Motion for Sanctions* should be GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Margaret Anne Morales' *Motion to Set Aside Default Judgment* is hereby GRANTED, and that the October 29, 2012 Default Judgment against Margaret Anne Morales entered by the 327th District Court of El Paso County, Texas in Cause No. 2012-DCV-05856 is hereby set aside, in its entirety, is declared **VOID**, and shall have no further force or effect in any manner or to any degree.

2

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Margaret Anne Morales' *Plea to the Jurisdiction* is hereby GRANTED and that the *Original Petition* filed by Anthony Cleve Aguilar under Cause No. 2012-DCV-05856 in the 327th District Court of El Paso County, Texas and subsequently transferred to this court pursuant to Transfer Order is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Margaret Anne Morales' *Motion for Sanctions* is hereby GRANTED, and Margaret Anne Morales, as Independent Executor of the Estate of Ramiro Aguilar, Jr., shall, within ten (10) days of the date of this Order, pay to Cavaretta, Katona & Francis, PLLC, the sum of $16,059.63 which this court finds reasonable and just, and to charge and allocate this sum as an advancement to the share otherwise distributable to Anthony Cleve Aguilar as beneficiary, heir or legatee of such Estate.

SIGNED and entered this the ___11___ day of January, 2013.

FILED

JAN 1 1 2013

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY TEXAS
BY: _____
DEPUTY

_____
Honorable Presiding Judge

APPROVED:

CAVARETTA, KATONA & FRANCIS, PLLC.
One Riverwalk Place
700 N. St. Mary's Street, Suite 1500
San Antonio, Texas 78205
(210) 588-2901 Telephone
(210) 588-2908 (Facsimile)

By: _____
WILLIAM E. LEIGHNER
State Bar No.: 24027441
Attorney for Margaret Anne Morales
Individually

BAYERN & AYCOCK, P.C.
745 E. Mulberry, Suite 300
San Antonio, Texas   78212
(210)   731-8300 Telephone
(210)   731-8111 (Facsimile)

By: _____
ARTHUR H. BAYERN
State Bar No.: 01940000
Attorney for Margaret Anne Morales,
Independent Executor

3

ANTHONY CLEVE AGUILAR
State Bar No.: 00936000
11405 North Loop
El Paso, Texas 79927
Attorney for Tony Aguilar

4

# EXHIBIT TWO

# DECEMBER 11, 2014 ORDER

CAUSE NUMBER 2012-PC-2800

| IN RE ESTATE OF | § | STATUTORY PROBATE COURT |
|---|---|---|
| | § | |
| RAMIRO AGUILAR, JR., | § | NO. 2 |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## ORDER GRANTING MONETARY SANCTIONS

*December 11, 2014,*

On ~~this day,~~ came on for consideration, the *Motion For Sanctions* filed by MARGARET ANNE MORALES, an interested person pursuant to Section 22.018 of the Texas Estates Code, in the Estate of Ramiro Aguilar, Jr. ("Decedent") and named Defendant to the Original Petition filed by Plaintiff, Anthony Cleve Aguilar, a/k/a Tony Aguilar as "Representative of the Estate of Ramiro Aguilar, Jr.", in Cause No. 2012-DCV-05856 in the 327th District Court of El Paso County, Texas, and subsequently transferred to this court pursuant to *Tex. Prob. Code Ann. §5B* (now Section 34.001 of the Texas Estates Code) by this Court's Order of October 10, 2012All Parties have been properly noticed and Anthony Cleve Aguilar appeared in person and Margaret Anne Morales appeared by and through her attorney of record, William E. Leighner. Having considered the pleadings and evidence presented, the Court finds that Anthony Cleve Aguilar lacks the necessary standing to sue or take any action on behalf of the Estate of Ramiro Aguilar, Jr.; that on August 31, 2012 Anthony Cleve Aguilar, as attorney of record for and on behalf of Margaret Morales, filed an Application To Probate Will and For Issuance of Letters Testamentary with this Court and that Anthony Cleve Aguilar was aware of the appointment and qualification of his client, Margaret Morales as Independent Executor of this Estate; that on October 4th and 5th of 2012 Anthony Cleve Aguilar did knowingly and intentionally misrepresent himself as the "Representative of the Estate of Ramiro Aguilar, Jr." and the Attorney for the Personal Representative of the Estate of Ramiro Aguilar, Jr., in issuing deposition Notices to Rene Daniel Pena, Mary de La O, Morgan Stanley Smith Barney and Susan

1

Enger seeking and purporting to obtain personal and financial information regarding Margaret Morales and the Estate of Ramiro Aguilar, Jr., through misrepresentation of himself as being the Personal Representative of said Estate; that on October 29, 2012, and with full knowledge and notice of this court's October 10, 2012 Transfer Order, the pending *Plea to the Jurisdiction* and the *Original Answer* which were both filed by Margaret Anne Morales on October 12, 2012, Anthony Cleve Aguilar wrongfully and intentionally pursued and obtained a fictitious Default Judgment against Margaret Anne Morales on his *Original Petition* before the 327th District Court of El Paso County, Texas in Cause No. 2012-DCV-05856. The court further finds that said Default Judgment was entered without jurisdiction and is therefore void, rendering further action by this court unnecessary. The court further finds that the *Original Petition* filed by filed by Anthony Cleve Aguilar had no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law, and the subsequent presentment of that Original Petition to the El Paso County District Court for Default Judgment was a gross and intentional misrepresentation to that Court and done with purposeful intent to harass Margaret Anne Morales by way of the egregious Default Judgment; the Court further finds that Anthony Cleve Aguilar caused Margaret Anne Morales to unnecessarily incur costs and attorneys' fees in the amount of $34,005.91 and that it is appropriate that Anthony Cleve Aguilar be ordered to pay to Margaret Anne Morales the sum of $34,005.91 as a reimbursement of such costs and fees and that the *Motion for Sanctions* should be GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Anthony Cleve Aguilar shall personally pay to Margaret Anne Morales, individually, the sum of $34,005.91 as monetary sanctions to reimburse her the costs and attorneys' fees which he caused her to

2

unnecessarily incur and shall pay such sum to Margaret Anne Morales with ten (10) days of the date of this Order.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Margaret Anne Morales shall have such orders, writs and process as may be necessary to enforce and collect the sanctions awarded herein.

SIGNED and entered this the 12th day of December, 2014.

Honorable Presiding Judge

3

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing Brief and Appendix was served on Laura Cavaretta, designated lead attorney for Margaret Morales, by electronic document transfer to cavarettal@ckf-law.com on May 5, 2015.

\s\ Anthony C. Aguilar

_____

ANTHONY C. AGUILAR